**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GOLD DOLLAR WAREHOUSE,
INCORPORATED; GROWERS TOBACCO
WAREHOUSE, INCORPORATED; BIG
BRICK TOBACCO WAREHOUSE,
INCORPORATED,
Plaintiffs-Appellants,

v.

No. 98-2461

DANIEL GLICKMAN, in his official
capacity as Secretary, United States
Department of Agriculture; SAMUEL
J. COLEY, in his official capacity as
North Carolina State Executive
Director of Farm Service Agency,
Defendants-Appellees.

GOLD DOLLAR WAREHOUSE,
INCORPORATED; GROWERS TOBACCO
WAREHOUSE, INCORPORATED; BIG
BRICK TOBACCO WAREHOUSE,
INCORPORATED,
Plaintiffs-Appellees,

v.

No. 98-2491

DANIEL GLICKMAN, in his official
capacity as Secretary, United States
Department of Agriculture; SAMUEL
J. COLEY, in his official capacity as
North Carolina State Executive
Director of Farm Service Agency,
Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Malcolm J. Howard, District Judge.
(CA-97-174-4-H)

Argued: November 30, 1999

Decided: April 13, 2000

Before MURNAGHAN, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded with instructions by
published opinion. Judge Luttig wrote the opinion, in which Judge
Murnaghan and Judge Motz joined.

_____

## COUNSEL

**ARGUED:** Thomas Courtland Manning, MANNING & CROUCH,
Raleigh, North Carolina, for Appellants. Barbara Dickerson Kocher,
Assistant United States Attorney, Raleigh, North Carolina, for Appel-
lees. **ON BRIEF:** Howard E. Manning, Jr., Kristen G. Lingo, Thomas
C. Kilpatrick, MANNING, FULTON & SKINNER, P.A., Raleigh,
North Carolina, for Appellants. Janice McKenzie Cole, United States
Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh,
North Carolina, for Appellees.

_____

## OPINION

LUTTIG, Circuit Judge:

Appellants tobacco warehouses appeal from the district court's dis-
missal, for failure to state a claim, of their challenge to appellee
United States Department of Agriculture's ("USDA")**1** assessment of

_____

**1** We refer to the defendant-appellees collectively as the USDA.

2

penalties. The USDA cross-appeals from the district court's rejection of its argument that the district court lacked subject matter jurisdiction over the dispute because the warehouses had not exhausted their administrative remedies; from the district court's declaratory judgment that the USDA may not assess penalties for activities that occurred outside a five-year statute of limitations period; and from the district court's permanent injunction prohibiting the USDA from enforcing penalties that would violate the statute of limitations.

For the reasons that follow, we affirm the district court's dismissal of one of the warehouses' claims. We hold, however, that the warehouses were required to complete their administrative appeal before bringing two of their other claims in federal court, and therefore that the district court lacked subject matter jurisdiction over those claims. Accordingly, we affirm in part, reverse in part, and remand with instructions to dismiss the claims that require exhaustion.

I.

The warehouses participate in the USDA's tobacco regulatory scheme. Under this scheme, the USDA sets quotas to limit the amount of tobacco individual farmers, or producers, are permitted to sell without losing their price protection from the government. Any excess tobacco over the quota limit that is sold by a producer is subject to a tobacco marketing quota ("TMQ") penalty of seventy-five percent of the market price of the tobacco.[2] Recognizing that excess tobacco

_____

[2] The TMQ penalty is established by 7 U.S.C. § 1314(a):

> The marketing of (1) any kind of tobacco in excess of the marketing quota for the farm on which the tobacco is produced . . . shall be subject to a penalty of 75 per centum of the average market price . . . . Such penalty shall be paid by the person who acquired such tobacco from the producer but an amount equivalent to the penalty may be deducted by the buyer from the price paid to the producer . . . or, if the tobacco is marketed by the producer through a warehouseman or other agent, such penalty shall be paid by such warehouseman or agent who may deduct an amount equivalent to the penalty from the price paid to the producer . . . .

7 U.S.C. § 1314(a) (emphasis added).

3

continues to be sold without anyone paying the TMQ penalties, the USDA has promulgated regulations over the years that extend the responsibility for paying the TMQ penalties to agents other than the producers.

There are three primary players in the sale of tobacco -- producers, dealers, and warehouses. Producers can auction their "producer tobacco" to dealers through auction on warehouse floors or through non-auction sales to dealers, and all of their sales are required by the USDA to be recorded on producer "cards," which indicate the amount of the producer's quota that has been sold. Once the producer tobacco has been sold by some means to a dealer, it becomes "resale tobacco" and can either be sold from dealer to dealer or through auction on a warehouse floor. Dealers also maintain dealer cards to record their purchases and sales so that the USDA can verify that they have not sold more than they recorded that they purchased. By 1992, the USDA extended liability for unpaid TMQ penalties to "[a] dealer or warehouse operator who permits [a person who owes TMQ penalties] to use such dealer's or warehouse operator's identification card to market tobacco." 7 C.F.R. § 723.311(d)(2).

The plaintiffs in this case are warehouses that were notified on August 4, 1997, by letters from the USDA that they were being assessed for unpaid TMQ penalties from sales of excess tobacco in 1990, 1991, and 1992. In relevant part, the letters from the USDA read as follows:

> This determination and resulting assessment arises out of an investigation of fraud and other illegal activity in the flue-cured tobacco program for the 1990-1992 marketing years by tobacco dealers, warehouse operators and others. . . .
>
> This investigation revealed, in a number of cases, a scheme to market excess tobacco. Generally, a tobacco dealer or other person familiar with tobacco auction warehouses and their operation would solicit persons to act as bogus dealers and those bogus dealers would obtain a tobacco dealer registration card and record books . . . . The "true" dealer would then use the bogus dealer registration

4

number and [book] to make false records and reports of pur-
chases of tobacco from the bogus dealer to the "true" dealer
that would then be used to sell excess tobacco of local pro-
ducers at auction warehouses. . . .

. . . .

 . . . These arrangements in the schemes set forth above
effectively amounted to a first marketing of the producer
tobacco on the floor of the warehouse, but under the guise
of the tobacco being tobacco which belonged to the dealers
[i.e. dealer tobacco].

J.A. 35-37, 49-51 (emphasis added). The warehouses, which are
required by the USDA to sell dealers' resale tobacco, contend that, to
the contrary, they went above and beyond to ensure that dealers were
legitimate and that they did not in any way collude to sell excess pro-
ducer tobacco without paying the TMQ penalties.

The warehouses appealed the assessments within the agency,
which appeal was stayed pending the result of a civil false claims
action. J.A. 42, 56. Following the stay of their appeal, the warehouses
filed the present action in the district court for a declaratory judgment
that the USDA lacked statutory authority to assess TMQ penalties
against them; for a declaratory judgment that the USDA's assess-
ments of any penalties due before August 4, 1992, were time-barred
by the five-year statute of limitations in 28 U.S.C.§ 2462;**3** and for
injunctions preventing the USDA from enforcing any assessments, or
in the alternative, any assessments for penalties due before August 4,
1992.

_____

**3** The generally applicable statute of limitations reads:

> Except as otherwise provided by Act of Congress, an action, suit
> or proceeding for the enforcement of the civil fine, penalty, or
> forfeiture, pecuniary or otherwise, shall not be entertained unless
> commenced within five years from the date when the claim first
> accrued . . . .

28 U.S.C. § 2462 (emphasis added).

5

The district court held that no administrative remedy was available to the plaintiffs for their challenge to the regulations and therefore rejected the USDA's argument that the court lacked subject matter jurisdiction because the warehouses had not exhausted administrative remedies. J.A. 226-31. The court also granted the warehouses' request for a declaratory judgment that the USDA could not enforce penalties due before August 4, 1992, and permanently enjoined the USDA from collecting those penalties. J.A. 244. However, the court denied the warehouses' request for a declaratory judgment nullifying the USDA regulations, and granted the USDA's motion to dismiss for failure to state a claim, because there was no set of facts that would entitle the warehouses to relief on their claim that the USDA regulations exceeded its statutory authority. J.A. 231-38. The warehouses appealed and the USDA cross-appealed.

II.

We address first the question of whether the district court properly exercised subject matter jurisdiction over this dispute. We conclude, for the reasons recited below, that the district court properly exercised subject matter jurisdiction over one of the claims made by the warehouses but improperly exercised jurisdiction over two other of the warehouses' claims.

We confess at the outset considerable uncertainty even as to the precise arguments advanced by the warehouses on the exhaustion question; however, after painstaking study of the briefs, we realize that much of that uncertainty is attributable to the briefing itself and to the arguments by the parties, and in particular to the briefing and argument of the warehouses.

The warehouses frame the issues before the court, in terms that bespeak the quintessential as applied challenge to agency regulations, as whether the USDA exceeded its authority by promulgating regulations that impose penalties on warehouses "even though (a) the warehouses properly complied with all of their regulatory obligations and went above and beyond their duties to avoid selling excess tobacco; [and] (b) the USDA's own negligent supervision of the tobacco market contributed to the loss of the funds the USDA now seeks to recover . . . ." Appellants' Br. at 1 ("Statement of Issues"). Although

6

they so frame the issues presented for review, the warehouses proceed to spend the lion's share of their brief arguing, as apparently they did before the district court, that the relevant USDA regulations exceed the scope of the agency's authority under 7 U.S.C.§ 1314 because they permit the USDA to assess penalties against warehouses for their sale of excess <u>resale</u> tobacco from dealers, whereas, they contend, section 1314 permits the assessment of penalties against the warehouses only for the purchase of excess tobacco directly from the producers. <u>See</u>, <u>e.g.</u>, <u>id</u>. at 3-22 (arguing that the warehouses' challenge to the regulations depends on the "fact" that penalties were assessed for the warehouses' sale of <u>resale</u> tobacco from the dealer); <u>see also</u> J.A. 234 (district court op.) (observing that "plaintiffs contend Congress intended that [TMQ] penalties be assessed against warehouses only when warehouses purchased tobacco from producers"). So seemingly evident is it from this portion of their brief that this is the warehouses' principal argument -- even though it was advanced in the warehouses' "Statement of the Facts" and "Statement of Regulatory Background" -- that the United States responds almost exclusively to this argument in its Brief in Response. In the "Argument" section of their brief, however, the warehouses argue instead (and only) that the regulations exceed the scope of section 1314 not because they permit the imposition of penalties for the sale of resale tobacco, but, rather, because they impose direct and personal liability for TMQ penalties upon warehouses, whereas, the warehouses contend, the statute provides only that the warehouses shall <u>collect</u> the TMQ penalties from those persons who owe them. <u>See</u>, <u>e.g.</u>, Appellants' Br. at 25 ("By adding regulations . . . that expanded the warehouses' liability for the TMQ penalties beyond mere collection responsibility, the government seeks to collect money from warehouses that it otherwise cannot under 7 U.S.C. § 1314(a)."); <u>id</u>. at 27 ("[The statute] does not put personal liability for the TMQ Penalty, beyond mere collection responsibility, on the warehouse . . . .").

The confusion sown by the warehouses' submissions was only compounded by their oral argument before the court. Before us, the warehouses led with the argument that the USDA could not impose personal liability on them, but, rather, was limited to enforcement of the warehouses' statutory obligation to collect the TMQ penalties from those persons responsible for their payment-- the argument that they had devoted comparatively little time briefing. In midstream,

7

however, they shifted to the argument that the USDA could not penalize the warehouses for tobacco bought from dealers (i.e., resale tobacco), counsel for the warehouses declaring at one point, for example, that "[t]his is all resale tobacco. The case is not about anything else but resale tobacco." At other times, the warehouses appeared to combine the two arguments. Thus, when asked whether the statute ever permits the USDA to assess penalties against warehouses, counsel responded that "[i]f they are the people who are marketing the tobacco for the producer, then it is their duty to collect the marketing penalty." And, as the argument progressed, the warehouses even appeared on occasion to contradict their own arguments. When asked by the court, for example, whether they were contending that the USDA was without any authority to levy a penalty against warehouses, counsel for the warehouses replied "[n]o, we are not contending that," a disclaimer that would seem to represent an abandonment of their collection argument. And, in rebuttal, in response to yet other questions, counsel stated that "[they were] not saying that the regulations do not reach resale tobacco," a statement that would seem to represent an abandonment of their argument that the regulations exceed the scope of the statute because they permit imposition of a penalty for the sale of resale tobacco.

Although it is apparent that the warehouses are themselves uncertain which arguments they wish to make in support of their claim that they were not required to exhaust administrative remedies (and certainly they appear uncertain as to the relative merit of the various arguments they arguably make), we ascribe to them two principal arguments -- that the USDA regulations impermissibly impose penalties for the warehouses' sale of resale tobacco and that the regulations impermissibly impose personal liability on the warehouses. We understand the warehouses' remaining arguments essentially to be policy arguments advanced in support of these two principal legal arguments. With this charitable ascription to the warehouses, we turn to the question whether either or both of these arguments (and the distinct statute of limitations argument) must be administratively exhausted before federal jurisdiction will lie.

Parties are required by statute to exhaust available administrative remedies before they may bring an action against the USDA in federal court. The exhaustion provision reads:

8

> Notwithstanding any other provision of law, a person shall <u>exhaust all administrative appeal procedures established by the Secretary or required by law</u> before the person may bring an action in a court of competent jurisdiction against -- (1) the Secretary; (2) the Department; or (3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e) (emphasis added). USDA regulations in turn define when the agency's administrative appeal procedures are available. The regulations permit program participants to contest "adverse decisions" made by the USDA within the National Appeals Division of the agency. 7 C.F.R. § 11.3(a). However, the regulations make clear, "[t]he procedures . . . may not be used to seek review of statutes or USDA regulations issued under Federal Law." 7 C.F.R. § 11.3(b).

The district court held that, because the warehouses were challenging "the department's authority to issue the regulations," the warehouses could not avail themselves of the agency appeal procedures under 7 C.F.R. § 11.3(b). Therefore, the court rejected the government's claim that the warehouses were required to exhaust administrative remedies. J.A. 228-31 (district court op.). Although the district court separately identified the two claims that we have ascribed to the warehouses when it addressed the merits of the warehouses' claims, <u>see id</u>. at 231-32 ("Plaintiffs seek a declaratory judgment that the USDA has no statutory authority to assess marketing penalties against them because [the statute] provides that only tobacco producers, and not warehouse operators, are liable for such penalties."); <u>id</u>. at 234 ("[P]laintiffs contend Congress intended that such penalties be assessed against warehouses only when warehouses purchased tobacco from producers."), the district court did not distinguish between these two claims for purposes of its exhaustion analysis. In failing to consider separately whether each of these individual claims required exhaustion, we believe that the district court erred. Upon consideration of these claims separately, we conclude that one requires exhaustion and one does not.

A.

The warehouses' argument that the regulations exceed the scope of section 1314 because they permit the USDA to impose <u>personal lia-</u>

9

bility, rather than mere collection responsibility, on the warehouses, we believe does not require exhaustion. It is uncontested that the regulations do impose personal liability on the warehouses, albeit a liability that is then subject to a form of indemnification through discount. Therefore, the warehouses' argument -- whether the regulations, by imposing personal liability on warehouses for the payment of penalties, exceed the scope of section 1314 -- is indeed a facial challenge to the regulations. If the warehouses are correct that the statute does not permit the USDA to impose personal liability against warehouses at all, there are no circumstances under which the regulations could lawfully be applied so as to impose personal liability on the warehouses. As a direct facial challenge to the regulations, this argument cannot be brought within the agency's appellate process because, as noted, 7 C.F.R. § 11.3(b) precludes agency review of USDA regulations. Administrative exhaustion is accordingly not required before suit upon this theory may be brought in federal court.

B.

The second argument that we ascribe to the warehouses, that the regulations exceed the scope of section 1314 because they permit the USDA to impose penalties against warehouses for the sale of excess resale tobacco, however, does require exhaustion. According to this argument, because section 1314 establishes penalties for tobacco marketed "by a producer through a warehouseman," 7 U.S.C. § 1314(a), the penalties cannot be imposed on warehouses for tobacco marketed by a dealer through a warehouseman. As explained below, this claim is an as applied challenge to the regulations, which includes a predicate challenge to the adverse decision of the agency. Therefore, the warehouses are required to complete their appeal through the USDA before they may bring suit in federal court based upon this theory.

The challenged regulations do not distinguish resale tobacco from producer tobacco. See 7 C.F.R. § 723.311(d)(2) ("A dealer or warehouse operator who permits an indebted person[, one who owes TMQ penalties on excess tobacco,] to use such dealer's or warehouse operator's identification card to market tobacco shall be liable for the amounts due by the indebted person to the United States under this part up to the amount of the value of the tobacco so. . . ."). However, the warehouses' regulatory challenge contests the reach of the regula-

10

tions to resale tobacco. As part of that challenge, the warehouses necessarily contend that they were engaged only in the sale of excess resale tobacco. The USDA, in contrast, contends that the warehouses were assessed penalties for engaging in the sale of excess producer tobacco. See J.A. 35-37, 49-51 ("[The warehouses' scheme] effectively amounted to a first marketing of the producer tobacco on the floor of the warehouse . . . ."); Appellees' Br. at 11-12 ("Agriculture could prove in the administrative proceedings that the knowing warehousemen stepped into the shoes of those persons liable for the TMQ penalties . . . or that the tobacco was truly marketed through the warehouse . . . ."); see also id. at 26 ("If the warehouse is used as the conduit for the sale at auction of what is in reality "producer" or first-sale excess tobacco, the warehouse can and must be held responsible . . . .").

Faced squarely with a challenge to its authority to penalize warehousers for their sale of resale tobacco, the USDA would presumably argue, as they did in this case, that the regulations reach both resale and producer tobacco. But even if one assumes that the warehouses are correct that the regulations cannot reach the warehouse sale of resale tobacco, the antecedent question to resolution of their challenge remains whether the warehouses were engaged in the sale of resale or producer tobacco. If they were engaged in the sale of producer tobacco, the warehouses would have no viable claim, even on the terms of their own argument. If they were engaged in the sale of resale tobacco, then, and only then, would they be in a position, according to their understanding of the regulations, to challenge the agency's promulgation of the regulations as beyond the agency's statutory authority. The antecedent factual question of whether the warehouses were engaged in the sale of producer or resale tobacco is unquestionably one for the agency in the first instance.

The warehouses' claim that they are facially challenging the USDA regulations and not the agency's adverse regulatory application of the regulations, see Appellants' Reply Br. at 3, is, upon close examination, belied by the warehouses' own briefs and arguments. First, the warehouses devote the opening twenty-two pages of their initial brief to establishing their version of the "facts," namely, that, contrary to the assertions of the USDA, the warehouses were not in collusion to sell producer tobacco, but rather went to great lengths to verify that

11

they were transacting business with legitimate dealers. See Appellants' Br. at 3-22; id. at 5 ("Plaintiff warehouses properly followed all the tobacco regulations, . . . and did not knowingly sell any excess tobacco."). They maintain that, in fact, they were dealing in resale tobacco and therefore could not even have been expected to know that the tobacco was excess tobacco. See id. at 7 ("The USDA's allegations focus only on the auction sale and Producer Tobacco, and ignore both the non-auction sale and Resale Tobacco. These omissions give the incorrect impression that the issues in this case revolve around auction sales of Producer Tobacco and the alleged failure of the warehouses to abide by the auction-sale regulations. The crucial issues here concern dealers' non-auction purchases of Producer Tobacco and their subsequent resales of the tobacco." (emphasis added)); id. at 22 ("[T]he TMQ penalties at issue in the USDA's actions against plaintiffs result from dealer resales of excess tobacco at auction." (emphasis added)). And, the warehouses allege that there were no safeguards put in place by the agency to enable them to know that they were reselling excess tobacco, and that if anyone is to blame, it is the agency itself because of its laxity in tracking excess tobacco. See id. at 10 ("In this case, the USDA failed to properly monitor . . . non auction entrance [into the market], and this failure, along with its failure to monitor non-auction resales . . . contributed to the lost TMQ penalties it now seeks to improperly recover from the warehouses."); id. at 14 ("By failing to examine the records in a timely manner, the USDA is largely responsible for the lost TMQ penalties that it now seeks to recover from plaintiff warehouses."). These "facts" are necessary for the warehouses' argument that the USDA exceeded its authority when it extended liability for TMQ penalties to innocent warehouses for the sale of resale tobacco.

The warehouses even articulate this challenge to the regulations in terms specific to the USDA's assessment of the penalties in their particular case; absent is any language of a facial challenge that there could be no lawful application of the regulations. For example, as referenced above, the warehouses frame the "Statement of Issues" before the court in terms specific to their case, a case in which "(a) the warehouses properly complied with all of their regulatory obligations and went above and beyond their duties to avoid selling excess tobacco; [and] (b) the USDA's own negligent supervision of the tobacco mar-

12

ket contributed to the loss of the funds the USDA now seeks to recover . . . ." Appellants' Br. at 1.

Indeed, in contesting the district court's dismissal, the warehouses even acknowledge that there are genuine issues of material fact, or disputed facts, in this case. See, e.g. , Appellants' Br. at 34 ("[Our] affidavits show that there are genuine issues of material fact in dispute . . . ."); id. ("[The warehouses] state that each inspected all required paperwork and never conspired with anyone else to sell excess tobacco -- contrary to the unsupported assertions of the USDA."); id. ("The facts that could determine whether plaintiffs are liable for the TMQ Penalties are therefore in dispute."). Given the indisputable evidence of the warehouses' underlying factual challenge to the adverse decision by the USDA to enforce penalties against them, we are persuaded that the warehouses' appeal within the agency must be completed before the federal courts can address any residual challenge that the USDA regulations are invalid to the extent that they permit the imposition of penalties on warehouses for the sale of resale tobacco.

C.

We turn, finally, to the warehouses' claim that, regardless of our view of the substantive merits of their challenges to the USDA regulations, the USDA was precluded by statute of limitations from imposing penalties for the sale of excess tobacco that occurred more than five years prior to the date of the agency's assessment. The district court did not address this limitations claim at all in its exhaustion discussion before ruling in favor of the warehouses on the merits of the claim. Although in oral argument the USDA did not contest the federal courts' jurisdiction over the statute of limitations issue either, we leave to the USDA appeal process in the first instance the question whether 28 U.S.C. § 2462's five year statute of limitations applies to TMQ penalties assessed by the agency, because this argument by the warehouses does not constitute a challenge to either a USDA regulation or a federal statute; rather, this is a straightforward argument for review of the USDA's adverse decision to assess penalties for years that would fall outside of a five-year statute of limitations period. In the event the issue is not adequately resolved within the agency

13

review process, this court will no doubt benefit from the agency's deliberations and opinions on this issue.

III.

Having concluded that the district court properly exercised jurisdiction over only the warehouses' claim that the USDA lacked authority to impose personal liability on them, it remains for us to consider whether the district court correctly rejected this claim on its merits. We conclude that it did, this claim bordering on the frivolous.

As observed above, the warehouses are anything but clear in their articulation of their collection claim. Although the warehouses do not even attempt to anchor their argument in any particular statutory language, presumably they believe that the provision in the statute for what, in effect, is almost a right of indemnification -- "[the warehouseman] may deduct an amount equivalent to the penalty from the price paid to the producer," 7 U.S.C. § 1314(a) -- negates the personal liability that otherwise is provided for on the face of the statute -- "such penalty shall be paid by such warehouseman," id. (emphasis added).

As it did in its exhaustion discussion, the district court addressed the warehouses' claims on the merits together in a single undifferentiated discussion, treating the claims as one challenge to the USDA's regulatory authority. Therefore, it is difficult for us to discern on which bases the district court rejected the warehouses' resale claim and on which it rejected the collection claim (assuming that the two were not rejected on the same bases). For example, the district court held that the regulations were "reasonably related" to 7 U.S.C. § 1314, and that the USDA's only means of collecting the unpaid TMQ penalties at this point is to collect the penalties from the warehouses. J.A. 234-36 (citing Mourning v. Family Publications Servs., 411 U.S. 356, 369 (1973) ("[T]he validity of a regulation promulgated [under enabling legislation] will be sustained so long as it is `reasonably related to the purpose of the enabling legislation.'" (citation omitted))). This reasoning could be the basis for rejection of either of the warehouse' claims -- that regulations that both reach resale tobacco and impose personal liability on the warehouses are reasonably

14

related to the statute and are necessary for the USDA to collect the unpaid penalties.

Although this "reasonably related" analysis may provide a reason for why the USDA can impose personal liability on warehouses for unpaid TMQ penalties, we believe the warehouses' collection claim can be rejected for a much simpler reason -- the statute on its face requires warehouses to pay the penalties, at least when the tobacco is marketed by the producer through a warehouse.**4** See 7 U.S.C. § 1314(a) ("[I]f the tobacco is marketed by the producer through a warehouseman . . ., such penalty shall be paid by such warehouseman . . . ." (emphasis added)). Given the novelty of this collection theory -- that the privilege of indemnification essentially operates to negate altogether the personal liability expressly imposed in the statute -- we are not surprised that the warehouses cite no authority in support of this theory. We are satisfied by a reading of plain language of the statute that Congress did not intend for us to read the statute's optional deduction language ("may deduct"), which follows the mandatory liability language ("shall be paid"), even as a condition precedent to the warehouses' obligation to pay the penalties, much less as a complete elimination of the mandatory payment obligation that appears on the face of the statute.

_____

**4** Within this collection theory argument, the warehouses make an equally suspect claim that imposing personal liability on warehouses would be in effect imposing strict liability, and thus unfair, because they lack the necessary information to ensure that they are not selling excess tobacco. See Appellants' Br. at 29-30. Not only does this argument piggy-back on the meritless argument that personal liability is not permitted, but the warehouses make no attempt to explain how strict liability would contravene the statute, which does not include a culpability requirement.

In yet another proffered argument under the collection theory, the warehouses contend that the presence of a statutory provision permitting the USDA to fine warehouses for filing false reports necessarily precludes the USDA from assessing penalties against warehouses for the unreported sale of excess tobacco. See id. at 30-32. This argument, in addition to lacking logical coherence on its face, also ignores the statutory language that makes express the reach of TMQ penalties to warehouses. See 7 U.S.C. § 1314(a) ("[The TMQ] penalty shall be paid by such warehouseman . . . .").

15

IV.

For the reasons stated, we conclude that the district court lacked jurisdiction to hear the warehouses' claim that the regulations cannot permissibly reach resale tobacco (as well as their claim that the USDA assessments were subject to a five-year statute of limitations), and we therefore remand those claims to the district court with instructions that these claims be dismissed. We conclude, however, that the warehouses were not required to exhaust their claim that the regulations impermissibly impose personal liability on warehouses, and we affirm the district court's denial of the warehouses' request for a declaratory judgment that, for this reason, the regulations are ultra vires.

The judgment of the district court is affirmed in part, reversed in part, and remanded with instructions.

IT IS SO ORDERED

16